**This order is SIGNED.**





**Dated: April 8, 2019**

**R. KIMBALL MOSIER**
**U.S. Bankruptcy Judge**

*Prepared and submitted by:*

Michael F. Thomson (#9707)
Peggy Hunt (#6060)
John J. Wiest (#11210)
DORSEY & WHITNEY LLP
111 South Main Street, 21st Floor
Salt Lake City, UT 84111-2176
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email: thomson.michael@dorsey.com
       hunt.peggy@dorsey.com
       wiest.john@dorsey.com

*Attorneys for Michael F. Thomson, Chapter 11 Trustee of The Falls Event Center LLC*

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>THE FALLS EVENT CENTER LLC; THE FALLS AT GILBERT, LLC; THE FALLS AT MCMINNVILLE, LLC; THE FALLS AT ST. GEORGE, LLC; THE FALLS OF LITTLETON, LLC; THE FALLS AT FRESNO, LLC; *and*, THE FALLS AT CLOVIS, LLC;<br><br>           Debtors. | Bankr. Case No. 18-25116<br>Bankr. Case No. 18-25419<br>Bankr. Case No. 18-25492<br>Bankr. Case No. 18-26653<br>Bankr. Case No. 18-27111<br>Bankr. Case No. 18-27713<br>Bankr. Case No. 18-28140<br><br>Chapter 11<br><br>The Honorable R. Kimball Mosier |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ORDER
GRANTING MOTION TO SUBSTANTIVELY CONSOLIDATE THE FALLS EVENT
CENTER LLC WITH DEBTORS THE FALLS AT GILBERT, LLC, THE FALLS AT
ST. GEORGE, LLC, THE FALLS OF LITTLETON, LLC, THE FALLS AT FRESNO,
LLC, AND THE FALLS AT CLOVIS, LLC; *and* NON-DEBTORS THE FALLS AT
CUTTEN ROAD, LLC, THE FALLS AT STONE OAK PARKWAY, LLC, THE FALLS
AT BEAVERTON, LLC, AND THE FALLS AT ROSEVILLE, LLC**

The matter before the Court is the *Chapter 11 Trustee's Motion To Substantively Consolidate The Falls Event Center, LLC with Debtors The Falls at Fresno, LLC, The Falls at Gilbert, LLC, The Falls at McMinnville, LLC, The Falls at St. George, LLC, and The Falls of Littleton, LLC; and Non-Debtors The Falls at Austin Bluffs, LLC, The Falls at Cutten Road, LLC, The Falls at Stone Oak Parkway, LLC, The Falls at Beaverton, LLC, and The Falls at Roseville, LLC* (the "<u>Motion</u>") filed in each of the above-captioned cases. TFEC Docket No. 327; Gilbert Docket No. 32; McMinnville Docket No. 68; St. George Docket No. 35; Littleton Docket No. 24; Fresno Docket No. 24; Clovis Docket No. 20. A hearing on the Motion was held on March 18, 2019 (the "<u>Hearing</u>"). Appearances were made on the record.

1.      These *Findings of Fact and Conclusions of Law* (the "<u>Findings and Conclusions</u>") are in support of the *Order Granting Motion To Substantively Consolidate The Falls Event Center, LLC with Debtors The Falls at Gilbert, LLC, The Falls at St. George, LLC, The Falls of Littleton, LLC, The Falls at Fresno, LLC, and The Falls of Clovis, LLC; and Non-Debtors The Falls at Cutten Road, LLC, The Falls at Stone Oak Parkway, LLC, The Falls at Beaverton, LLC, and The Falls at Roseville, LLC* (the "<u>Order</u>") filed concurrently herewith.

4843-7283-3166\6

2.      In entering the Order and these Findings and Conclusions, the Court considered

the pleadings and documents filed in conjunction with the Trustee's request for substantive

consolidation, including the following:

    a.      The Motion;

    b.      The *Memorandum of Law* [TFEC Docket No. 331; Gilbert Docket No. 33;

McMinnville Docket No. 70; St. George Docket No. 36; Littleton Docket No. 25; Fresno

Docket No. 26; Clovis Docket No. 21] (the "<u>Memorandum</u>") in support of the Motion;

    c.      The *Declaration of Michael F. Thomson, Chapter 11 Trustee of The Falls

Event Center LLC* [TFEC Docket No. 332; Gilbert Docket No. 34; McMinnville Docket

No. 71; St. George Docket No. 37; Littleton Docket No. 26; Fresno Docket No. 27;

Clovis Docket No. 22] (the "<u>Trustee Declaration</u>") in support of the Motion;

    d.      The *Declaration of Gil A. Miller* [TFEC Docket No. 333; Gilbert Docket

No. 35; McMinnville Docket No. 72; St. George Docket No. 38; Littleton Docket No. 27;

Fresno Docket No. 28; Clovis Docket No. 23] (the "<u>Miller Declaration</u>") in support of the

Motion;

    e.      The *Certificate of Service* [TFEC Docket No. 337; Gilbert Docket No. 36;

McMinnville Docket No. 73; St. George Docket No. 39; Littleton Docket No. 28; Fresno

Docket No. 29; Clovis Docket No. 24] (the "<u>Certificates of Service of Motion

Documents</u>") of the Motion, Memorandum, Trustee Declaration, and Miller Declaration

on all parties who have requested ECF notification in each of the above-captioned

bankruptcy cases;

f.      The *Notice of Hearing* [TFEC Docket No. 335; Gilbert Docket No. 37; McMinnville Docket No. 74; St. George Docket No. 40; Littleton Docket No. 29; Fresno Docket No. 30; Clovis Docket No. 25] (the "Notice") on the Motion;

g.      The *Certificate of Service* [TFEC Docket No. 366; Gilbert Docket No. 38; McMinnville Docket No. 75; St. George Docket No. 41; Littleton Docket No. 30; Fresno Docket No. 31; Clovis Docket No. 26] (the "Certificate of Service of Notice") of the Notice on all creditors and parties in interest;

h.      The *Objection* [TFEC Docket No. 361] (the "American Objection") to the Motion filed by American Savings Life Insurance Co. ("American");

i.      The *Objection* [TFEC Docket No. 362; McMinnville Docket No. 82] and *Second Declaration of John Rasmussen* [TFEC Docket No. 363; McMinnville Docket No. 83] (together, the "Museum Objection") to the Motion filed by Evergreen Aviation and Space Museum and the Captain Michael King Smith Educational Institute (the "Museum"); and

j.      The *Declaration of Michael F. Thomson Concerning Service of Notice* [TFEC Docket No. 383; Gilbert Docket No. 54; McMinnville Docket No. 91; St. George Docket No. 47; Littleton Docket No. 43; Fresno Docket No. 40; Clovis Docket No. 35] the ("Declaration Concerning Service").

3.      In entering these Findings and Conclusions, the Court has also considered the representations made and evidence in support of the Motion presented by the Trustee at the Hearing, lack of objections to the consolidation as set forth in the Order, and the entire record of these bankruptcy cases. Based on the foregoing, the Court makes the following Findings and

Conclusions pursuant to Federal Rule of Civil Procedure 52(a), made applicable to this matter by Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Under Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, when appropriate.

## I.    FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.    JURISDICTION AND VENUE

4.    On July 11, 2018, TFEC filed a petition seeking relief under Chapter 11 of the Bankruptcy Code (the "TFEC Petition Date").

5.    The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

6.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### B.    BACKGROUND

#### 1.    TFEC and the Affiliated Companies

7.    TFEC operates event centers located in multiple states and a water park located in Oregon. It also is the sole member and manager of fifteen "Affiliated Companies" described below.

8.    Eight of the Affiliated Companies own or lease the real property where business operations take place, as follows:

a.    The Falls at Elk Grove, LLC ("Elk Grove") previously held title to real property located at 8280/8290 Elk Grove Blvd., Elk Grove, California, where an event center is operated by TFEC. That real property was sold at a post-petition foreclosure sale and TFEC now leases the real property directly from the current owner.

b.      The Falls at Fresno, LLC ("Fresno") holds title to real property located at 4105 W. Figarden Dr., Fresno, California, where an event center is operated by TFEC.

c.      The Falls at Gilbert, LLC ("Gilbert") holds title to real property located at 4635 East Baseline Road, Gilbert, Arizona, where an event center is operated by TFEC.

d.      The Falls of Littleton, LLC ("Littleton") holds title to real property located at 8199 Southpark Ct., Littleton, Colorado, where an event center is operated by TFEC.

e.      The Falls at McMinnville, LLC ("McMinnville") holds title to real property located at 510 Northeast Captain Michael King Smith Way, McMinnville, Oregon, where an event center and Wings and Waves Waterpark (the "Waterpark") are operated by TFEC. The Waterpark operations are a dba of TFEC, but the real property on which the Waterpark sits is titled in the name of McMinnville.

f.      The Falls at Roseville, LLC ("Roseville") holds title to real property located at 240 Conference Center Dr., Roseville, California, where an event center is operated by TFEC.

g.      The Falls at St. George, LLC ("St. George") holds title to real property located at 170 South Mall Drive, St. George, Utah, where an event center is operated by TFEC.

h.      The Falls at Trolley Square, LLC ("Trolley") leases real property located at 580 S. 600 E, Salt Lake City, Utah, where an event center is operated by TFEC.

9.      The other seven Affiliated Companies own real property and have no other business operations. These Affiliated Companies are as follows:

4843-7283-3166\6

a.      The Falls at Austin Bluffs, LLC ("Austin Bluffs") holds title to real property located at Township 13 South Range 66 West El Paso County, Colorado.

b.      The Falls at Beaverton, LLC ("Beaverton") holds title to real property located at 12655 Southwest Miliken Way, Beaverton, Oregon.

c.      The Falls at Bricktown, LLC ("Bricktown") holds title to real property located at 108 East California Ave., Oklahoma City, Oklahoma.

d.      The Falls at Burr Ridge, LLC ("Burr Ridge") holds title to real property located at 120 Harvester Drive, Burr Ridge, Illinois.

e.      The Falls at Clovis, LLC ("Clovis") holds title to real property located at 250 & 270 North Clovis Ave., Clovis, California.

f.      The Falls at Cutten Road, LLC ("Cutten Road") holds title to real property located at 13455 Cutten Road, Houston, Texas.

g.      The Falls at Stone Oak Parkway, LLC ("Stone Oak") holds title to real property located at S. Side of Stone Oak Parkway West of Highway 281, San Antonio, Texas.

Consideration of the Motion as to McMinnville and Austin Bluffs has been continued until the dates specified in ¶ 44 *infra*, and these Findings of Fact and Conclusions of Law do not apply to McMinnville and Austin Bluffs. For the avoidance of doubt, the term "Affiliated Companies" hereinafter does not include McMinnville and Austin Bluffs.

2.      **Management**

10.    All of the Affiliated Companies are wholly-owned subsidiaries of TFEC.

11.     Since their inception, TFEC and the Affiliated Companies have had common

managers, and TFEC has directed all actions of the Affiliated Companies.

12.     Steven L. Down ("Down") founded TFEC, and from 2011 to 2018, he was the

Chief Executive Officer. Down and his brother, David W. Down, were also managers of TFEC

and the Affiliated Companies. TFEC Docket No. 72, ¶ 29.

13.     On or about June 28, 2018, Brooks Pickering became Chief Restructuring Officer

of TFEC.

14.     On or about August 30, 2018, Mr. Pickering resigned and Gil A. Miller was

appointed Chief Restructuring Advisor of TFEC. TFEC Docket No. 99. Mr. Miller served in this

role until the appointment of the Trustee.

15.     On November 27, 2018, the Court entered an *Order Approving Appointment of

Chapter 11 Trustee,* approving the appointment of the Trustee as the Chapter 11 trustee of the

TFEC estate. TFEC Docket No. 214.

16.     The Trustee manages the Affiliated Companies through TFEC, which is the sole

member of the Affiliated Companies.

### 3.     TFEC Capitalization

17.     Down capitalized TFEC primarily through private investor funding and hard

money loans.

18.     Prior to the Petition Date, on May 10, 2018, the Securities and Exchange

Commission filed a *Complaint* against TFEC and Down in the United States District Court for

the District of Utah (Case No. 2:18-cv-00382), a copy of which is attached to the Trustee's

Memorandum as Exhibit A. The Complaint alleges that Down had raised approximately $120

million from approximately 300 investors since 2011, and Down misrepresented the profitability

of TFEC even after he was fully informed that TFEC was not profitable and had never been

profitable. On May 11, 2018, the District Court entered a *Final Judgment* in this lawsuit in which

TFEC and Down consented to entry of the Final Judgment without admitting or denying the

allegations in the Complaint, Down agreed to pay $150,000 in civil penalties, and TFEC and

Down were enjoined from violating securities laws. Case No. 2:18-cv-00382 Docket No. 7.

19.     The Trustee's investigation to date indicates that information that Down provided

to investors about the profitability of TFEC's enterprise was not accurate, and the funds obtained

from operating the event center and Waterpark businesses were not sufficient to sustain the entire

enterprise.

### 4.     Affiliated Companies' Capitalization and Property Acquisition

20.     None of the Affiliated Companies has ever had a source of income.

21.     The debts of each of the Affiliated Companies have been paid by TFEC.

22.     Each of the Affiliated Companies acquired title to real property through hard

money or traditional loans that were secured by the real property they held. TFEC caused each of

the Affiliated Companies to enter into these loans, and any cash down payments or debt service

on the loans was made from TFEC funds.

23.     TFEC guaranteed or is otherwise obligated for the majority of the Affiliated

Companies' real property loans.

4843-7283-3166\6

5.    **Business Operations**

24.    TFEC's corporate office is located in a building that it leases located in West

Jordan, Utah (the "Office"). TFEC runs its operations and manages each of the Affiliated

Companies from the Office, and none of the Affiliated Companies have separate offices.

25.    All books and records of TFEC and the Affiliated Companies are located in the

Office.

26.    TFEC has approximately two hundred and twenty-five employees. The Affiliated

Companies have no employees, and to the extent that they require services they rely on TFEC.

27.    TFEC manages each of the Affiliated Companies without receiving compensation

or remuneration, including providing bookkeeping services and attending to management of

property owned or leased by the Affiliated Companies.

28.    TFEC's business includes operating event centers and a waterpark at the real

properties held by some of the Affiliated Companies. TFEC has no written contracts with the

Affiliated Companies for use of the properties.

29.    TFEC attends to all aspects of running the event centers and executing events,

including contracting with persons wanting to hold events, securing prepayments, servicing

events, contracting with vendors that assist in servicing the events, and collecting final payments.

30.    All activity for TFEC and the Affiliated Companies has always been filed on

consolidated tax returns as the Affiliated Companies are considered to be disregarded entities by

the Internal Revenue Service.

10

6.      **Cash Management and Accounting**

31.     Prior to the TFEC Petition Date TFEC had 3 bank accounts. TFEC Docket No. 72 (Schedule B).

32.     Prior to the TFEC Petition Date, none of the Affiliated Companies had bank accounts, and creditors of the Affiliated Companies were therefore paid on checks issued by TFEC using its accounts.

33.     Prior to the TFEC Petition Date, TFEC maintained two sets of accounting records. The first contained activity for TFEC corporate overhead and all activity for operating and non-operating Affiliated Companies ("TFEC QuickBooks"). The second file contained only the activity for Waterpark operations, even though the Waterpark is a dba of TFEC. Within the TFEC QuickBooks, all real property, debt and operational income and expenses of the Affiliated Companies were consolidated. Each transaction was identified to a particular "Class" representing the Affiliated Company to which the transaction related. There was no attempt made to book intercompany receivables and payables to identify TFEC's payment of any of the Affiliated Companies' obligations, such as debt service or property taxes.

34.     The Trustee's investigation, while still preliminary and ongoing, indicates that TFEC used the funds it obtained from business operations and investors to fund whatever the needs of the entire enterprise were at any given time.

35.     The assets and business activities of TFEC and the Affiliated Companies have been treated as a single enterprise.

4843-7283-3166\6

### 7.    The Affiliated Companies' Bankruptcy Filings

36.    After the TFEC Petition Date, the following companies filed cases seeking relief under Chapter 11 of the Bankruptcy Code: Elk Grove (July 16, 2018, Case No. 18-25208), Gilbert (July 25, 2018, Case No. 18-25419), McMinnville (July 27, 2018, Case No. 18-25492), St. George (September 6, 2018, Case No. 18-26653), Littleton (September 24, 2018, Case No. 18-27111), Fresno (October 15, 2018, Case No. 18-27713), Bricktown (October 17, 2018, Case No. 18-27766), and Clovis (October 31, 2018, Case No. 18-28140) (collectively, with TFEC, the "Debtors").

37.    As the trustee of TFEC, the Trustee manages these Debtors as debtors in possession.

38.    To date, the following companies have not sought bankruptcy protection: Austin Bluffs, Burr Ridge, Cutten Road, Cedar Park, Stone Oak, Beaverton, Roseville, and Trolley (the "Non-Debtors").

### C.    CONSOLIDATION

39.    The Court finds that it is in the best interests of creditors and all parties in interest to substantively consolidate the following Debtor and Non-Debtor Affiliated Companies with TFEC as of the TFEC Petition Date: Gilbert, St. George, Littleton, Fresno, Clovis, Cutten Road, Stone Oak, Beaverton, Roseville (collectively, the "Falls Parties").

40.    The Trustee also sought consolidation of Debtor McMinnville and Non-Debtor Austin Bluffs. *See* Motion.

12

4843-7283-3166\6

1.    **Basis for and Benefit of Consolidation of the Falls Parties**

41.    The Court finds that it is in the best interests of creditors and all parties in interest to substantively consolidate the Falls Parties with TFEC for reasons general to all of the Falls Parties as well as reasons specific to certain of the Falls Parties.

42.    The following considerations general to most or all of the Falls Parties support consolidation:

a.    The Falls Parties are alter egos of TFEC.

b.    Substantive consolidation will make it unnecessary to quantify and prosecute intercompany claims that may exist between TFEC and the Falls Parties, thus conserving considerable resources of the separate estates or entities. For example, at this time, arguably, the Falls Parties on whose properties TFEC was conducting business have claims against TFEC for use of their properties, and TFEC has claims against each of the Falls Parties for, among other things, costs of managing the Falls Parties and monies it used to purchase properties and pay the debts of the Falls Parties. The cost of quantifying these claims will likely exceed any benefit that might result. Among other things, (a) to the extent that TFEC may have claims against the Falls Parties, those Parties have no source of income to pay TFEC other than from any equity that may exist in their respective properties; (b) the Falls Parties' primary creditors are those claiming to hold claims secured by property, and therefore, any equity in the property will be paid to TFEC.

c.    Substantive consolidation of the Falls Parties with TFEC will resolve corporate governance and authority issues as to these Affiliated Companies.

d.      For the Non-Debtor Falls Parties, substantive consolidation will allow the Trustee to include these entities in a reorganization or orderly liquidation, including the benefits associated with bankruptcy sale provisions and bankruptcy transparency. Specifically, substantive consolidation will allow the Trustee to sell real property owned by Cutten Road, Stone Oak, Beaverton, and Roseville under Section 363 of the Bankruptcy Code for a higher price than if that property were sold without the protections of Section 363, and thus realize a higher return for creditors.

e.      Substantive consolidation will greatly streamline the TFEC case and the cases of the Debtor Falls Parties, thus, among other things, reducing costs and delays related to separate administration, minimizing confusion by parties in interest created by the various cases (and non-cases), and consolidating noticing issues.

f.      Substantive consolidation will benefit the creditors of the individual Falls Parties by giving those creditors recourse against TFEC and all of the Falls Parties rather than simply the individual company against which they currently hold a claim.

g.      Substantive consolidation will benefit TFEC's creditors by allowing the Trustee to realize greater returns on the sale of the Falls Parties' properties and then upstream those funds more easily and efficiently to TFEC for the benefit of its creditors. Further, substantive consolidation will not expose TFEC to significantly greater liability than it currently has. TFEC has already guaranteed the debt of Fresno, Cutten Road, and Stone Oak and will incur no additional liability by being consolidated with those three companies. Consolidation will make TFEC liable for possible deficiency claims held by the creditors of Gilbert, Littleton, and Roseville, but even should those claims accrue,

14

they would, based on information available at this time, constitute only about 2.5% of the total unsecured claims against TFEC, and thus do not represent a significant dilution to TFEC unsecured creditors, whose claims at this time are estimated to exceed $100 million.

43.    Other means of administering the Debtors' bankruptcy cases would be less efficient and less likely to maximize the value of assets for the benefit of creditors. For example, appointment of a trustee for each of the Debtors may not be beneficial given that, in the absence of consolidation, one person likely could not serve as a trustee for TFEC and the Affiliated Companies given the significant and complicated intercompany claims. Multiple trustees and professionals would greatly increase administrative costs to the detriment of all creditors. Accordingly, substantive consolidation of the Falls Parties with TFEC is in the best interests of all parties in interest and the respective bankruptcy estates.

### 2.    Companies Not Consolidated at this Time.

44.    Due to the American Objection and the Museum Objection, the Court reserves consideration of the Motion as it relates to Non-Debtor Austin Bluffs and Debtor McMinnville. A hearing on the American Objection is scheduled for April 17, 2019, and a hearing on the Museum Objection is scheduled for May 6, 2019.

45.    The Court makes no findings regarding the appropriateness of consolidating the following companies with TFEC at this time: Debtor Elk Grove, Debtor Bricktown, Non-Debtor Cedar, Park Non-Debtor Burr Ridge, and Non-Debtor Trolley.

4843-7283-3166\6

### 3.      <u>Notice and Objections</u>

46.     Based on the Notice, the Certificate of Service of Motion Documents, the Certificate of Service of Notice, and the Declaration Concerning Service, the Court finds that notice of the Motion and the Hearing was properly served on all creditors of TFEC, the Falls Parties, McMinnville, and Austin Bluffs giving them an opportunity to object to the relief sought in the Motion. Such notice is sufficient, and no further notice or service is required.

47.     No objections were filed as to substantive consolidation of Gilbert, St. George, Littleton, Fresno, Clovis, Cutten Road, Stone Oak Parkway, Beaverton, and Roseville with TFEC.

48.     American filed the American Objection, objecting only to the substantive consolidation of Austin Bluffs with TFEC.

49.     The Museum filed the Museum Objection, objecting only to the substantive consolidation of McMinnville with TFEC.

50.     At the hearing, the Court continued the hearing on the Motion as to consolidation of Austin Bluffs and McMinnville, and counsel for American and the Museum did not object to the consolidation of the Falls Parties, as defined herein, with TFEC.

51.     Accordingly, there are no objections to the substantive consolidation of the Falls Parties with TFEC.

52.     The Court finds that all parties who were served with the Notice and did not object have consented to the Court exercising jurisdiction over Non-Debtors Cutten Road, Stone Oak Parkway, Beaverton, and Roseville.

4843-7283-3166\6

53.    Based on the notice that has been provided, this Court may order substantive

consolidation of the Debtor and Non-Debtor Falls Parties with TFEC.

## II.    CONCLUSIONS OF LAW

### A.    THE COURT HAS AUTHORITY TO SUBSTANTIVELY CONSOLIDATE THE FALLS PARTIES WITH TEFC

54.    Substantive consolidation is an extraordinary remedy, arising out of federal

common law for the purpose of advancing the equitable powers of the bankruptcy courts. *See* 11

U.S.C. § 105(a); *In re Owens Corning, Inc.*, 419 F.3d 195, 205, 208 & 216 (3d Cir. 2005); *see*

*also In re George Love Farming, LC*, 366 B.R. 170, 180 (Bankr. D. Utah 2007) (Thurman, J.)

(recognizing same). The result is that "claims of creditors against separate debtors morph to

claims against the consolidated survivor." *Owens Corning*, 419 F.3d at 205. The Court of

Appeals for the Tenth Circuit has stated:

> The power to consolidate authorizes the court to pierce the several corporate veils and to disregard the existence of the separate corporate entities. Thus where a corporation is a mere instrumentality or alter ego of the bankrupt corporation, with no independent existence of its own, equity would favor disregarding the separate corporate entities. It is, of course, proper to disregard a separate legal entity when such action is necessary to avoid fraud or injustice.

*Federal Deposit Ins. Corp. v. Hogan (In re Gulfco Inv. Corp.)*, 593 F.2d 921, 928-29 (10th Cir.

1979) (relying on *Fish v. East*, 114 F.2d 177, 191 (10th Cir. 1940)).

55.    "The bankruptcy court's power of substantive consolidation has been considered

part of the bankruptcy court's general equitable powers since the passage of the Bankruptcy Act

of 1898." *Alexander v. Compton (In re Bonham)*, 229 F.3d 750, 763 (9th Cir. 2000) (citing in

part *Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 219 (1941)). This power is widely

accepted under the Bankruptcy Code, including by this Court in reliance on the Tenth Circuit's

decisions in *In re Gulfco Inv. Corp.*, 593 F.2d at 921, and *Fish v. East*, 114 F.2d at 177, which

were both decided under the Bankruptcy Act. *See also Owens Corning,* 419 F.3d at 206-209

(discussing history and concluding that although extraordinary, "[n]o court has held that

substantive consolidation is not authorized"); *Bonham*, 229 F.3d at 765 (same); *George Love

Farming,* 366 B.R. at 180 (same); *see also In re Horsley*, No. 99-30458 JAB, 2001 WL 1682013,

at *3 (Bankr. D. Utah Aug. 17, 2001) (Boulden, J.) (stating that the ability to order substantive

consolidation was "implied from the bankruptcy court's general equitable powers"); *Heller v.

Langenkamp (In re Tureaud)*, 59 B.R. 973, 975-77 (N.D. Okla. 1986) (affirming order

consolidating individual debtor with non-debtor entities controlled by the debtor); *In re

Mansfield Corp.*, Bankr. Case No. 02-28236, Docket No. 245 (Bankr. D. Utah) (Boulden, J.),

Order Substantively Consolidating Cases.

### B.   <u>SUBSTANTIVE CONSOLIDATION OF THE FALLS PARTIES WITH TFEC IS APPROPRIATE UNDER APPLICABLE LAW</u>

56.   "The propriety of ordering substantive consolidation is primarily a factual

question and is determined by a balancing of interests" of those seeking consolidation and those

opposing it, if any. *Matter of Baker & Getty Fin. Servs., Inc.*, 78 B.R. 139, 142 (Bankr. N.D.

Ohio 1987); *see In re F.A. Potts & Co.*, 23 B.R. 569 (Bankr. E.D. Pa. 1982). In *Fish v. East,* the

Tenth Circuit set forth the following ten factors to consider in a consolidation analysis:

> (1)   The parent corporation owns all or majority of the stock of the subsidiary;
>
> (2)   The parent and subsidiary corporations have common directors or officers;
>
> (3)   The parent corporation finances the subsidiary;

(4)     The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation;

(5)     The subsidiary has grossly inadequate capital;

(6)     The parent corporation pays the salaries or expenses or losses of the subsidiary;

(7)     The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation;

(8)     In the papers of the parent corporation, and in the statements of its officers, the subsidiary is referred to as such or as a department or division;

(9)     The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation; and

(10)    The formal legal requirements of the subsidiary as a separate and independent corporation are not observed.

*Fish*, 114 F.2d at 191

57.     In *In re Horsley*, this Court stated: "The *Gulfco/Fish* criteria can be reduced into two general components: (1) the extent to which the entity to be substantively consolidated was managed or controlled by the debtor, and (2) whether the entity to be substantively consolidated had an economic existence independent from the Debtor." *Horsley*, 2001 WL 1682013, at *4.

58.     The *Gulfco/Fish* factors are met—in short, as noted in *Horsely*, the Falls Parties are controlled by common management and they have no economic existence separate and apart from each other. These entities truly have been treated as a single enterprise. See ¶¶ 20-36, *supra*.

59.     Specifically --

•       the Affiliated Companies are all wholly-owned subsidiaries of TFEC, ¶¶ 7, 10, *supra*;

19

- since their inception, TFEC and the Affiliated Companies have had common managers, and TFEC directs all actions of the Affiliated Companies, ¶ 11, *supra*;

- none of the Affiliated Companies ever had a source of income, ¶ 20, *supra*;

- the debts of the Affiliated Companies have been paid by TFEC, ¶ 21, *supra*;

- TFEC caused each of the Affiliated Companies to enter into real property loans, and any cash down payment or debt service on those loans was made from TFEC's funds, ¶ 22, *supra*;

- TFEC guaranteed or is otherwise obligated to pay many of the Affiliated Companies' loans, ¶ 23, *supra*;

- the business operations of the TFEC and the Affiliated Companies were operated on a consolidated basis, with the Affiliated Companies relying on TFEC for use of an office, employees, and management and there was no consideration provided for the same, ¶¶ 24-29, *supra*;

- there are no written contracts for TFEC's use of the Affiliated Companies' properties, ¶ 28, *supra*;

- the Affiliated Companies did not even have bank accounts prior to the TFEC Petition Date, and creditors of the Affiliated Companied were therefore paid on checks issued by TFEC using its accounts, ¶ 32, *supra*;

- TFEC and the Affiliated Companies have always filed consolidated tax returns and have consolidated financial records, ¶ 30, *supra*; s*ee, e.g.*, *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 86 n.7 (3d Cir. 2003) (noting that many bankruptcy courts have used the *In re Vecco* seven-factor test to determine if substantive consolidate is appropriate, which test considers, among other factors, "the presence or absence of consolidated financial statements"); *In re Worldcom, Inc.*, 2003 WL 23861928, at *8 (Bankr. S.D.N.Y. 2003) (considering the filing of consolidated financials as a factor in determining whether debtors were operationally integrated for substantive consolidation purposes); *In re World Access, Inc.*, 301 B.R. 217, 253–56 (Bankr. N.D. Ill. 2003) (declining substantive consolidation but noting the filing of consolidated financials with the SEC as a factor in determining the debtors' public perception to creditors for substantive consolidation);

- accounting protocols typically used for separate entities were not followed, ¶¶ 32-34, *supra*; and

- cash was used by TFEC to fund whatever needs of the enterprise were at any given time, ¶ 34, *supra*.

60.  In short, TFEC and the Affiliated Companies are alter egos.

61.  As a result of these facts, the Court has determined that, for the reasons set forth herein and based on the evidence proffered at the hearing, substantive consolidation of TFEC and the Falls Parties is appropriate and in the best interests of creditors and parties in interest of both TFEC and the Falls Parties.

62.  Substantive consolidation is the most efficient and best way to maximize the value of assets and distributions to creditors. *See* ¶¶ 42-43, *supra*.

63.  Thus, the Falls Parties are substantively consolidated with TFEC.

**C.  <u>CONSOLIDATION OF THE FALLS PARTIES WITH TFEC SHALL BE EFFECTIVE AS OF THE TFEC PETITION DATE</u>**

64.  Substantive consolidation of the Falls Parties with TFEC shall take place as of the TFEC Petition Date.

65.  The analysis of whether to order substantive consolidation *nunc pro tunc* "closely parallel[s]" the analysis of whether to substantively consolidate entities in the first place. *In re Bonham*, 226 B.R. 56, 99 (Bankr. D. Ala. 1998) (citing *In re Auto-Train Corp.*, 810 F.2d 270, 277 (D.C. Cir. 1987)), *aff'd,* 229 F.3d 750, 771 (9th Cir. 2000). Courts have adopted two tests for *nunc pro tunc* consolidation, with the key factor under both tests being whether there was "reliance on an entity's apparent separateness." *Bonham,* 226 B.R. at 99.

66.  The first test is established in *In re Auto-Train Corporation*, 810 F.2d 270 (D.C. Cir. 1987), where the Court of Appeals for the D.C. Circuit held that *nunc pro tunc* consolidation

requires the movant to show that such consolidation is necessary to achieve some benefit or avoid some harm. If this showing is made, *nunc pro tunc* consolidation will be allowed unless any opposing party proves that it relied on the separate credit of one of the entities to be consolidated **and** that the harm to it in shifting a filing date will outweigh the benefits of *nunc pro tunc* consolidation. *Id.* at 277.

67.    The second test for *nunc pro tunc* consolidation was set forth by the Court of Appeals for the Sixth Circuit in *In re Baker & Getty Financial Srvcs., Inc.*, 974 F.2d 712 (6th Cir.1992). Under this test, the following two factors are considered in determining whether substantive consolidation should occur as of the petition date: (1) whether the creditors dealt with the consolidated entities as if they were the same, **or** (2) the affairs of the consolidated entities are so entangled that it would not be feasible to identify and allocate all of their assets and liabilities. *Id.*

68.    Under either of these tests, substantive consolidation of Falls Parties as of the TFEC Petition Date is appropriate. The Falls Parties had no corporate existence outside of the TFEC corporate group. The Falls Parties' affairs are so entangled with those of TFEC that it would be most efficient to consolidate them as of the TFEC Petition Date, which allows the Trustee to capture the Falls Parties' assets as assets of the consolidated estate.

69.    No party in interest has objected to substantive consolidation as of the TFEC Petition Date.

70.    Accordingly, the Falls Parties are substantively consolidated with TFEC as of the TFEC Petition Date.

-------- (End of Order) --------

4843-7283-3166\6